UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------- X

DONTAE SEBBERN,

                                         Plaintiff,    **FIRST AMENDED COMPLAINT**

        -against-

THE CITY OF NEW YORK; P.O. CHRISTOPHER        10-cv-4749 (RRM) (JMA)
PARCO; P.O. JOHN/ JANE DOES #1-6; the individual
defendants sued individually and in their official capacity,     ECF Case

                                   Defendants.    <u>Jury Trial Demanded</u>

--------------------------------------------- X

        Plaintiff, Dontae Sebbern, by and through his attorneys, Michael O. Hueston, Esq., Javier A. Solano, Esq., and Michael P. Kushner, Esq. states as follows:

**PRELIMINARY STATEMENT**

        1.    This is a civil rights, common law, and tort action in which plaintiff seeks relief for the violation of plaintiff's rights secured by 42 U.S.C. § 1983; the Fourth, and Fourteenth Amendments to the United States Constitution; and the laws of the State of New York. The claims arise from an incident that occurred on or about July 15, 2009. During the incident defendant City of New York, and members of the New York City Police Department ("NYPD") subjected plaintiff to, among other things, excessive force, assault and battery, and implementation and continuation of an unlawful municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant to 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

**JURISDICTION & VENUE**

2. This action is brought pursuant to 42 U.S.C. § 1983, and the Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law. A Notice of Claim was duly filed on defendant City of New York within 90 days of the incident at issue, more than 30 days have elapsed since such filing and the City has refused to settle plaintiff's claims. Moreover, this action has been filed within one year and 90 days of the incidents that are the basis of this claim.

4. Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Richmond County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

**PARTIES**

5. Plaintiff Dontae Sebbern is a resident of the State of New York, Richmond County.

6. Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7. Defendant P.O. Christopher Parco is a New York City Police Officer, employed with the 120th Precinct, located in Staten Island, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

8. Defendant P.O. John/ Jane Does #1-6 are unknown New York City Police Officers, employed with the 120th Precinct, located in Staten Island, New York or other as yet unknown NYPD assignment who violated plaintiff's rights as described herein.

2

9.  The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

10. On July 15, 2009, at and in the vicinity of 1465 Castleton Avenue, Staten Island, New York, several police officers operating from the 120th Precinct, including upon information and belief, defendants P.O. Christopher Parco and P.O. John/Jane Does #1-6, at times acting in concert and at times acting independently, committed the following illegal acts against the plaintiff.

11. On July 15, 2009, at approximately 5:00 p.m., at and in the vicinity of 1465 Castleton Avenue, Staten Island, New York, while plaintiff was lawfully driving a vehicle on the roadway, the individual defendants detained plaintiff.

12. Thereafter, plaintiff was ordered to exit the vehicle and place his hands on the hood.

13. Plaintiff exited the vehicle and complied with the defendants' demands. One of the individual defendants then forced plaintiff's head into the hood of the vehicle, causing pain to the plaintiff. This same officer then dragged plaintiff off of the vehicle and pinned him between the vehicle and a nearby fence and assaulted him about the head and body with punches. This same officer then forced plaintiff to the ground next to the vehicle and continued to assault him with kicks and punches about his head and body.

14. Thereafter, several other vehicles from the 120th Precinct arrived at the scene and several other NYPD officers exited the vehicles. These other officers joined the assault of the plaintiff by kicks and punches about his face and body. Defendants then dragged plaintiff into an adjoining yard and continued to exert excessive force against him. Excessively tight handcuffs were then placed about his wrists and he was held down by an officer kneeling into his back.

15. While plaintiff was handcuffed and positioned facedown, the defendants continued to assault him with punches and kicks about his head and body. The defendant who was kneeling on his back bent plaintiff's thumb back to exert pain on plaintiff and to force him to indicate to his family (who witnessed the entire assault) that he was all right.

16. Plaintiff was then placed facedown in a "taco bag" by the defendants and was unable to breathe for a period of time due to the position he was in. This "taco bag" is essentially a body-bag type contraption that immobilizes the person placed in it. While plaintiff was in the "taco bag" the defendants continued to assault him with kicks and punches and on two separate occasions lifted him off the ground to a height of at least two feet and allowed him to drop to the ground, causing him pain.

17. During the arrest of plaintiff, the defendants committed excessive force against him by committing the above-described acts. Those defendants who did not touch him, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

18. The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiff, since plaintiff was unarmed, compliant, and did not resist arrest.

19. Plaintiff was physically injured as a result of the excessive use of force, and suffered an AC Separation, facial contusions and abrasions, as well as a sprained thumb.

20. Thereafter plaintiff was taken to St. Vincent's Hospital at Richmond University Medical Center. While plaintiff was at Richmond University Medical Center, the defendants unnecessarily interfered with valid medical requests from the doctors and staff at the hospital who tried to treat plaintiff's injuries.

21. The actions of the individual defendants were performed within the scope of their employment and authority, and for whose acts the defendant City is liable under the doctrine of resondeat superior.

22. The actions of the individual defendants violated Mr. Sebbern's clearly established rights under the Fourth, and Fourteenth Amendments to the Constitution and were the direct and proximate cause of the physical and psychological injuries he suffered.

23. The actions of the individual defendants were intentional, malicious, and in bad faith, thus giving rise to punitive damages as to the individual defendants.

## COUNT ONE

### (42 U.S.C. § 1983 UNREASONABLE AND EXCESSIVE FORCE)

24. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

25. The individual defendants' use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable and caused plaintiff pain and injury.

26. Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth Amendment to the United States Constitution.

## COUNT TWO

### (42 U.S.C. § 1983 – MONELL CLAIM)

27. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

28. Prior to July 15, 2009, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Mr. Sebbern's rights.

29. It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct. Instead, acts of brutality were tolerated by the City. The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors. For instance, IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect.

30. The City has been on notice for more than a generation that brutality is widespread and that particular reforms need to be implemented. From reform-minded Commissioner Patrick Murphy to the Mollen Commission twenty-five years later, the City has been repeatedly cautioned that a systemic tolerance for brutality flourishes throughout the NYPD. Twenty years before plaintiff was brutalized, the Mollen Commission report noted, "This tolerance, or willful blindness, extends to supervisors as well. This is because many supervisors share the perception that nothing is really wrong with a bit of unnecessary force and because they believe that this is the only way to fight crime today." *Mollen Comm. Report,* at 49.

31. It was the City's policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

32. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to

come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."

33. This "code of silence" is a custom deeply ingrained in the members of the New York City Police Department so as to constitute the actual policy of the City of New York.

34. The City has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers. The City has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other New York City police officers, thereby causing and encouraging New York City police officers, including the individual defendant officers in this case, to violate the rights of citizens such as Mr. Sebbern.

35. It is believed that the City has maintained no system or an inadequate system of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers. This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes New York City police officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene, nor give evidence against them. These systemic deficiencies include, but are not limited to:

    a. Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about eh misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

  b. Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

  c. Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

  d. Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

  e. Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in the misconduct which was the subject of the investigation, and acceptance of conclusions which are not supported by the evidence or which contradict such evidence; and,

  f. Failure to identify potential "code of silence" violations and maintain accurate records of allegations of such misconduct.

36. The City, prior to and at the time of this incident, was aware of the need for more or different training, rules, regulations, investigation and discipline relating to police officers who practice the "code of silence," and was deliberately indifferent to that need.

37. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices, and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including

8

swearing falsely and committing perjury, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens.

38. As a direct and proximate result of the City's deliberate indifference, defendants violated Mr. Sebbern's constitutional rights for which he suffered substantial damages.

## COUNT THREE

### (PENDANT CLAIM OF ASSAULT AND BATTERY)

39. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

40. By their actions, as set forth above, defendants committed atrocious acts of battery against plaintiff which included beating and kicking him about the face and body without cause. This use of physical force against plaintiff was unnecessary and excessive.

41. The City is responsible for the excessive and unnecessary physical force use by defendants because it occurred while they were acting in the scope of their employment, specifically in the course of arresting Mr. Sebbern.

42. Accordingly, defendants are liable to plaintiff under New York State law for assault and battery.

## COUNT FOUR

### (PENDANT CLAIM – RESPONDEAT SUPERIOR)

43. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

44.     The individual defendants were acting within the scope of their employment as New York City Police Officers when they committed the above described acts against plaintiff, including assaulting and battering plaintiff.

45.     The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a.     Compensatory damages in an amount to be determined by a jury;

    b.     Punitive damages in an amount to be determined by a jury;

    c.     Costs, disbursements, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

    d.     Such other and further relief as this Court may deem just and proper,

        including injunctive and declaratory relief.

DATED:     Brooklyn, New York
              March 13, 2013

_____

Michael P. Kushner, Esq.
KUSHNER LAW GROUP, P.L.L.C.
16 Court Street, Suite 2901
Brooklyn, New York 11241
(718) 504-1440
mk@kushlawgroup.com

JAVIER A. SOLANO                    MICHAEL O. HUESTON, ESQ.
350 Fifth Avenue, Suite 5900          16 Court Street, Suite 3301
New York, New York 10118            Brooklyn, New York 11241
(212) 714-6600                               (718) 246-2900
jsolano@solanolegal.com               mhueston@nyc.rr.com